IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

A.D.

                Plaintiff,

v.                                    CIVIL ACTION NO. 2:22-cv-00432

ANTHONY DEMETRO, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Matthew Currence's ("Currence") Motion to Dismiss. (ECF No. 17.) For the reasons discussed herein, Defendant Currence's motion is **DENIED**.

## I.     BACKGROUND

This matter arises out of incidents where Defendant Anthony Demetro ("Demetro") allegedly sexually harassed and assaulted Plaintiff while acting as her West Virginia Division of Corrections and Rehabilitation ("WVDCR") parole officer. (*See* ECF No. 1.) According to the Complaint, Plaintiff was on supervised parole, and Defendant Demetro was assigned to supervise Plaintiff. (*Id.* at 3, ¶ 7.) Plaintiff claims that Defendant Demetro sexually harassed and sexually assaulted her while he was on duty as her parole officer. (*Id.* at 4, ¶¶ 10, 12.)

The Complaint identifies Defendants David Jones ("Jones"), Currence, and Robert Arnold ("Arnold") as supervisors of Defendant Demetro. (*Id.* at 2–3, ¶¶ 3–5, 8–9.) Specifically, Plaintiff states that Defendant Jones was the Regional Director of Parole, Defendant Currence was

1

"a senior supervisor for West Virginia parole officers," including Defendants Demetro and Jones, and Defendant Arnold was the "Director of Parole Services, as well as the most senior in the chain of command of supervisors for defendants DeMetro, Jones and Currence," and had the "ultimate supervisory authority[.]" (*Id.* at 2–3, ¶¶ 3–5, 9.) Yet, according to Plaintiff, Defendants Jones, Currence, and Arnold failed to properly supervise Defendant Demetro. (*Id.* at 4, ¶ 11.) Additionally, she asserts that "multiple female victims" of Defendant Demetro's alleged sexual abuse reported Demetro to his supervisors, who failed to take action to prevent the abuse from continuing. (*Id.* at 10–11, ¶¶ 45–48.)

Plaintiff filed the present lawsuit on October 5, 2022, against Defendants Demetro, Jones, Currence, and Arnold. (*See generally id.*) Plaintiff asserts three 42 U.S.C. § 1983 claims against Defendants Demetro and Jones, (*id.* at 6–10) (asserting § 1983 claims for (1) "sexual abuse and exploitation by a state official," (2) "conspiracy to deprive civil rights," and (3) "violation of Eighth Amendment"), as well as supervisory liability claims under § 1983 against Defendants Jones, Currence, and Arnold,[1] (*id.* at 10–12).

Defendant Currence filed the pending Motion to Dismiss on November 21, 2023. (ECF No. 17.) Plaintiff filed a timely response, (ECF No. 20), and Defendant Currence never filed a reply. As such, this motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp.*

---

[1] Defendant Arnold was dismissed in a previous Memorandum Opinion and Order. (ECF No. 34.)

*v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III. DISCUSSION

Defendant Currence moves to dismiss the § 1983 supervisory liability claim against him, arguing that he is entitled to qualified immunity. (ECF No. 18 at 5–10.) Alternatively, Defendant Currence claims that Plaintiff's claim is time barred by the statute of limitations. (*Id.* at 11.) Each is discussed in turn below.

A. *Qualified Immunity*

When performing discretionary functions, government officials are "entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.'" *Rish v. Johnson*, 131 F.3d 1092, 1095 (4th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). While a defendant may assert a qualified immunity defense through a Rule 12(b)(6) motion, "the defense faces a formidable hurdle" and "is usually not successful." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 396 (4th Cir. 2014) (internal citations omitted). This is because, at this very early stage in the proceedings, dismissal under Rule 12(b)(6) is only appropriate if the plaintiff "fails to state a claim that is plausible on its face." *Id.* at 396 (quoting *Iqbal*, 556 U.S. at 678) (emphasis in original).

To determine whether qualified immunity applies, "courts engage in a two-step inquiry." *Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016). The first step asks whether the facts, "taken in the light most favorable to the" nonmoving party, establish that the officer "violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the evidence establishes a violation of a constitutional right, the second prong assesses whether the right was "clearly established" at the time of the events at issue. *Id.* These steps may be done in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the answer to either question counsels against the nonmoving party, qualified immunity applies.

In the context of supervisor liability, which Plaintiff alleges, (*see* ECF No. 1 at 10–12, ¶¶ 43–53), a plaintiff "must make several separate showings to demonstrate that [a defendant] lack[s] qualified immunity," *see Shaw v. Stroud*, 13 F.3d 791, 801 (4th Cir. 1994), because supervisors "can only be held liable for the failings of a subordinate under certain narrow circumstances," *see Green v. Beck*, 539 Fed.Appx. 78, 80 (4th Cir. 2013) (citations omitted). Absent a finding that supervisory defendants are responsible for the alleged acts of a subordinate defendant, they will

4

be afforded qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (noting that qualified immunity is "an immunity from suit rather than a mere defense to liability" (emphasis in original)). There are three elements necessary to establish supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Stroud*, 13 F.3d at 799.

As to the first element, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* As to the second element, a plaintiff "may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (internal quotation marks omitted). Finally, as to the third element, "proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains . . . or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions." *Id.* (internal quotation marks and alterations omitted). In order to overcome a motion to dismiss, a plaintiff must allege facts sufficient to plausibly suggest an entitlement for relief under this standard.

In this case, Defendant Currence appears to only challenge the first prong of the *Katz* test. Specifically, while Defendant Currence argues that Plaintiff failed to plausibly assert a claim of supervisory liability under § 1983, (*see* ECF No. 18 at 6, 8), he never argues that the alleged

5

constitutional violation was not clearly established, (*see generally id.*). Thus, the sole question before the Court is whether the facts in the Complaint, taken as true, are sufficient to show that Defendant Currence plausibly violated Plaintiff's constitutional rights.

To that extent, Defendant Currence does not argue that Defendant Demetro's alleged conduct did not present "a pervasive and unreasonable risk of constitutional injury" to Plaintiff. Instead, Defendant Currence claims there are "no facts" that he had actual or constructive knowledge of or was deliberately indifferent to Defendant Demetro's behavior because "Plaintiff does not allege that she reported any misconduct" to him. (*See* ECF No. 18 at 8–9.) Defendant Currence also asserts that there "can be no causal link" between any of his alleged inaction and Defendant Demetro's alleged behavior because "Plaintiff did not even assert a timeframe" when Demetro supposedly engaged in the misconduct against her. (*See id.* at 9.)

The Court disagrees. Plaintiff alleges that Defendant Currence "had actual knowledge . . . that Plaintiff was exposed to sexual abuse and mistreatment" by Defendant Demetro and "had notice of a pattern of unconstitutional acts" by Defendant Demetro, (ECF No. 1 at 10 ¶¶ 44–45), which are legal conclusions that are not considered on a motion to dismiss, *see Iqbal*, 556 U.S. at 678. However, Plaintiff also states that "[u]pon information and belief, multiple female victims of DeMetro reported, or attempted to report the abuse to the defendant supervisors." (ECF No. 1 at 11, ¶ 48.) Indeed, in a related case, another plaintiff alleged that her husband "contacted the Parkersburg Parole Office and informed Defendant Currence . . . that Defendant Demetro was sexually harassing [her] while she was under his supervision and control," but "Currence dismissed [her] complaints of sexual harassment as lies."[2] *K.S. v. Demetro*, 2:22-cv-00422 (ECF No. 42 at

---

[2] The Court can take judicial notice of its own docket. *See* Fed. R. Evid. 201; *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("The most frequent use of judicial notice of ascertainable facts is in noticing the

14, ¶ 73.) Taking these factual allegations as true, it is plausible that Defendant Currence had constructive or actual knowledge of Defendant Demetro's alleged behavior that posed a pervasive and unreasonable risk of constitutional injury to citizens, including Plaintiff.

Beyond calling potential victims liars, the Complaint asserts that Defendant Currence "failed to take any action" when presented with allegations of Defendant Demetro's misbehavior. (ECF No. 1 at 11.) This alleged refusal to take action in the face of multiple reports can plausibly demonstrate deliberate indifference. *See Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001) (explaining that a supervisor's "failure to respond to mounting evidence of potential [sexual] misconduct" by a subordinate exhibited deliberate indifference).

Further, Plaintiff claimed that Defendant Currence's failure to enforce laws and policies directed at deterring sexual abuse "heightened the danger of sexual abuse to Plaintiff" by Defendant Demetro, (ECF No. 1 at 11), which is sufficient to show an "affirmative causal link" at the motion to dismiss stage. Although a delay between a supervisor's actions and their subordinate's actions can affect whether there is an affirmative causal link, *see, e.g.*, *Jones v. Wellham*, 104 F.3d 620, 627 (4th Cir. 1997) (finding that the link between a supervisor's decisions in 1979 and 1980 and his subordinate's rape in 1990 was "simply too attenuated"); *Martinez v. California*, 444 U.S. 277, 284–85 (1980) (holding that girl's death caused by parolee five months after his release was "too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law"), the law does not require Plaintiff to plead a specific timeframe, as Defendant Currence suggests, *see Stroud*, 13 F.3d at 799.

---

content of court records.") (internal citation omitted); *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (explaining that a district court may "properly take judicial notice of its own records").

Accordingly, Defendant Currence is not entitled to qualified immunity at this stage in the proceedings.

B. *Statute of Limitations*

Typically, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999) (internal quotation marks omitted). But "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint," the court may resolve the applicability of a defense by way of a Rule 12(b)(6) motion. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir.2007). Therefore, in deciding a motion to dismiss based on the statute of limitations, the Court can only grant the motion if it "clearly appear[s] on the face of the complaint" that the plaintiff's claims are time-barred. *Id.* (finding that the complaint failed to allege a date on which the contract was breached or a date on which the breach was discovered, therefore making it impossible for the court to determine from the face of the complaint a date of claim accrual); *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

Here, Defendant Currence acknowledges that Plaintiff does not specify the dates of the alleged sexual assaults or sexual harassments in her complaint. (*See* ECF No. 1.) It is abundantly obvious then, that it does not "clearly appear on the face of the complaint" that Plaintiff's claim is time-barred.[3] *Goodman*, 494 F.3d at 464. Accordingly, at this stage, the Court cannot find that Plaintiff's claim is time-barred by the statute of limitations.

---

[3] Defendant Currence argues that the Court should dismiss the claim because "[t]he absence of any date . . . establishes . . . that the Complaint is insufficient as it may be time barred." (ECF No. 18 at 11 , at 10.) This argument, however, places a burden on Plaintiff to plead that her claim arose within the applicable statutes of limitations, even though it is well-established law that a plaintiff is not be required to "plead affirmatively in [a] complaint matters that might be

8

## IV.     CONCLUSION

For these reasons, Defendant Currence's Motion to Dismiss, (ECF No. 17) is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     June 19, 2023

THOMAS E. JOHNSTON, CHIEF JUDGE

---

responsive to affirmative defenses even before the affirmative defenses are raised." *Goodman*, 494 F.3d at 466. The burden to prove an affirmative defense based on the statutes of limitations lies exclusively with Defendant Currence. *See id.*